UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH B. SCALES,           :    **CIVIL NO. 3:10-CV-00333**
                             :
            Plaintiff        :    (Chief Judge Kane)
                             :
       v.                    :    (Magistrate Judge Smyser)
                             :
JEFF WITHERITE, et al.,      :
                             :
            Defendants       :

**REPORT AND RECOMMENDATION**

I. Background and Procedural History.

        The plaintiff, a state prisoner proceeding *pro se*,
commenced this 42 U.S.C. § 1983 action by filing a complaint on
February 16, 2010.

        The complaint names as defendants: 1) Jeff Witherite, a
unit manager at the State Correctional Institution at Camp Hill
(SCI-Camp Hill); 2) Philip Richardson, a physician's assistant at
SCI-Camp Hill; 3) Teresa Law, the Healthcare Administrator at
SCI-Camp Hill; 4) C.O. Oyster, a corrections officer at SCI-Camp

Hill; 5) Barry Beaven[1], a doctor at SCI-Camp Hill; 6) John

Polakovich, the Superintendent at SCI-Camp Hill; and 7) Jeffrey

Beard, the Secretary of the Pennsylvania Department of

Corrections.

The plaintiff alleges that, on September 29, 2008, he

ruptured his Achilles tendon playing basketball at SCI-Camp Hill.

He alleges that defendant Witherite forced him to walk over a

quarter of a mile to the dispensary.  He claims that defendant

Witherite violated the Eighth Amendment by intentionally delaying

his access to treatment and causing him pain and suffering.

The plaintiff alleges that, on October 9, 2008, he had

surgery at the York Memorial Hospital.  He alleges that the

surgeon, Dr. Sullivan, told him that he had a complete tear of

his tendon but that the surgery went well.  He alleges that Dr.

Sullivan instructed him to keep his leg elevated and to return in

seven to fourteen days to have the cast removed and the sutures

---

1. The plaintiff identifies this defendant as Barry Beavens.  The
defendant, however, indicates that his name is Barry Beaven.

taken out.  He alleges that Dr. Sullivan told him he would take three months to heal.

The plaintiff alleges that, when he returned to SCI-Camp Hill on October 10, 2008, defendant Richardson removed his cast because he was suspected of having something concealed in the cast.  He alleges that the cast had been applied at the hospital after surgery while he was unconscious and while an officer was present.  The plaintiff alleges that defendant Richardson caused him unbearable pain and caused his ankle to swell by taking his foot out the fixed position in which it had been placed.  The plaintiff claims that defendant Richardson violated the Eighth Amendment.

The plaintiff alleges that, on October 27, 2008, he was taken to Dr. Sullivan's office to have the cast removed and the sutures taken out.  He alleges that the nurse asked what had happened to the cast and he told her.  He alleges that the nurse then removed the cast and took out the sutures.  He alleges that Dr. Sullivan then examined the incision, checked his range of motion and told him that the nurse would be back to fit him for a

3

camwalker (Walking Boot). He alleges that when the nurse returned she said that she was instructed not to give him the boot because it was unauthorized. He alleges that guards Washington and Reed said that they would get the matter straightened out with defendant Law. The plaintiff alleges that defendant Law was made aware that Dr. Sullivan did not supply the boot because he was instructed not to by her department. The plaintiff claims that defendant Law violated the Eighth Amendment by not giving him a boot which was a key item needed to recover from his injury.

    The plaintiff alleges that he was taken back to the infirmary at SCI-Camp Hill where a nurse gave him a handheld walker. He alleges that he tried to no avail to explain the difference between a walker and a boot. The plaintiff alleges that the next morning he informed defendant Beaven of what had happened and he asked why he wasn't allowed to have the boot. He alleges that defendant Beavens said that there had been a mix up and that a boot was ordered for him. The plaintiff alleges that approximately six days later a staff member came to the ward and asked his shoe size so that she could order the boot.

The plaintiff alleges that, on October 14, 2008, defendant Oyster moved him to D Ward and placed him in a bed that was situated in the corner of the room. He alleges that it was difficult for him to squeeze through the gap, which was only eleven inches wide, between the foot of another bed and the duct work on the wall. He alleges that the next morning he explained this to defendant Oyster and asked if he could move to one of three open beds. He alleges that defendant Oyster told him "no." He alleges that, on November 6, 2008, defendant Oyster ordered him to get up and pack his property because he was being discharged back to the block. He alleges that in the process he slipped and fell going through the gap. He alleges that his ankle hit the bottom corner of the duct work which ripped him open from the inside of his right ankle to the opposite side of his heel. He alleges that he retore his Achilles tendon causing him to need a second surgery. The plaintiff claims that defendant Oyster violated the Eighth Amendment by placing him in that particular bed when it was obvious that it was difficult for him to negotiate the eleven-inch gap on crutches.

The plaintiff alleges that, on December 12, 2008, defendant Beaven informed him that he was being discharged from the infirmary and sent back to population. He alleges that he had only had a month and six days of healing and that he still had an open wound. He alleges that defendant Beavens told him that he would be called back every other day to have his dressings changed. The plaintiff requested a wheelchair from defendant Beavens, but defendant Beavens denied that request.

The plaintiff alleges that after seven days back on the block during which his wound had not been checked his leg felt hot and he took the window off the cast and observed a yellowish fluid oozing from the wound. He alleges that he informed the corrections officers on duty who called the dispensary. He alleges that he was sent to the dispensary where he saw a doctor and a nurse. He alleges that his wound was checked and cleaned, that fresh dressing was applied, that two types of antibiotics were prescribed and that he was scheduled for daily dressing changes. The plaintiff alleges that he asked the doctor and nurse if he could use a wheelchair because of the distance that he had to traverse on crutches on a daily basis. He alleges that

they agreed that the request was reasonable and they gave him a wheelchair. He alleges that he had daily dressing changes until January 12, 2009. The plaintiff claims that defendant Beaven violated the Eighth Amendment by disregarding an excessive risk of harm by discharging him back to population with an open wound and deviating from the surgeon's instructions again.

The plaintiff alleges that, on January 13, 2009, he was taken to see Dr. Nachtigall, the surgeon who performed the second surgery. He alleges that Dr. Nachtigall removed his cast and put on new dressings and a new cast.

The plaintiff alleges that, on January 15, 2009, he sent a letter to defendant Polakovich informing him of all that he had to endure since he had been injured. He alleges that defendant Polakovich replied that Major Horner would be visiting the plaintiff shortly.

The plaintiff alleges that, on January 29, 2009, Major Horner interviewed him and told him that he would conduct an investigation. The plaintiff alleges that, on February 18, 2009,

he was transferred to the State Correctional Institution at Graterford. In July of 2009, after the plaintiff had filed a grievance and had sent a certified letter to the Major inquiring about the investigation, Major Horner stated that his investigation revealed that he could not substantiate or corroborate the plaintiff's allegations of verbal abuse by staff.

The plaintiff alleges that defendant Polakovich learned of the violations of the plaintiff's Eighth Amendment rights and failed to do anything to fix the situation other than having the plaintiff transferred to SCI-Graterford. He alleges that he was transferred even though he had an appointment to have his cast removed on February 27, 2009 by Dr. Nachtigall in York, Pennsylvania. The plaintiff alleges that defendant Polakovich is legally responsible for the operation of SCI-Camp Hill and for the welfare of the inmates at that institution.

The plaintiff alleges that defendant Beard is legally responsible for the overall operation of the Department of Corrections and each institution under its jurisdiction including SCI-Camp Hill.

The plaintiff is seeking declaratory relief as well as compensatory and punitive damages.

By an Order dated April 8, 2010, defendants Beard and Polakovich were dismissed from this action.

Currently pending is defendant Beaven's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

II.  Motion to Dismiss Standard.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

9

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, more is required than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Id.* "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Some claims will demand relatively more factual detail to satisfy this standard, while others require less." *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 320 n.18 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010).

In the instant case, in support of his motion to dismiss defendant Beaven has submitted documents that were not attached to the complaint as exhibits, that are not matters of public record and that are not the basis of the plaintiff's claims. In opposition to the motion to dismiss, the plaintiff also submitted documents outside of the pleadings.

We can not consider the documents outside of the pleadings without converting the motion to dismiss into a motion for summary judgment and providing the plaintiff notice of such conversion and an opportunity to present pertinent summary judgment evidence in opposition. *See* Fed.R.Civ.P. 12(d) and *Renchenski v. Williams*, 622 F.3d 315, 340 (3d Cir. 2010)(setting forth the notice that the court must provide to a *pro se* prisoner plaintiff when converting a motion to dismiss into a motion for

summary judgment). The plaintiff has not been provided with proper notice of conversion of the motion. Accordingly, we will not convert the motion to dismiss into a motion for summary judgment and we will not consider the documents outside of the complaint in deciding the motion to dismiss.

III. Discussion.

The complaint is construed as containing both state law medical malpractice claims and 42 U.S.C. § 1983 Eighth Amendment claims against defendant Beaven. Defendant Beaven seeks dismissal of both categories of claims.

A. Medical Malpractice Claims.

Defendant Beaven contends that the plaintiff's medical malpractice claims against him should be dismissed because the plaintiff did not file a proper certificate of merit.

Pennsylvania Rule of Civil Procedure 1042.3(a) provides:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Rule 1042.3 applies to civil actions in which a professional liability claim is asserted against a licensed professional. Pa.R.Civ.P. 1042.1(a). Pursuant to Pa.R.Civ.P. 1042.7, if a certificate of merit is not filed as required by Pa.R.Civ.P. 1042.3 the prothonotary, on praecipe of the defendant, shall enter a judgment of *non pros* against the plaintiff. The certificate of merit requirement of Pa.R.Civ.P. 1042.3 applies in

14

a case pleading a claim for medical malpractice, whether the case is filed in state or federal court. *See generally Chamberlain v. Giampapa*, 210 F.3d 154, 161 (3d Cir. 2000)(holding that New Jersey's affidavit of merit statute [which is similar to Pennsylvania's Rule 1042.3] is a substantive state law that must be applied by federal courts sitting in diversity).

The plaintiff has not filed a proper certificate of merit. On April 30, 2010, the plaintiff did file a certificate of merit form. *See Doc. 17.* This form set forth the three alternatives under Pa.R.Civ.P. 1042.3(a). However, the plaintiff did not indicate on this form under which alternative he was proceeding. Thus, the form is not a proper certificate of merit. On May 3, 2010, the plaintiff filed another copy of the form that he had filed on April 30, 2010. *See Doc. 20.* Attached to this copy of the form is a copy of Pa.R.Civ.P. 1042.9, which sets forth the certificate of merit form, and on this copy of Pa.R.Civ.P. 1042.9 there is a check mark in front of the first option, the first option is circled and there is a check mark or X in front of the third option. Again this is not a proper

certificate of merit.[2]  Because the plaintiff has not filed a

proper certificate of merit, it will be recommended that the

negligence claims against defendant Beaven be dismissed.[3]

---

2.  In his brief in opposition to the motion to dismiss, the
plaintiff asserts that he asked his brother and cousin to file the
certificate of merit and that if two boxes were checked it was
merely a mistake.  He asserts that expert testimony is not
required in connection with his claims against defendant Beaven as
it is "just plain common sense that an infection was likely to
occur in the type of environment the plaintiff was placed in and
appropriate care should have been given to avoid an infection."
*Doc*. 37 at 3.  Because the negligence of a medical provider
"encompasses matters not within the ordinary knowledge and
experience of laypersons a medical malpractice plaintiff must
present expert testimony to establish the applicable standard of
care, the deviation from that standard, causation and the extent
of the injury." *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003).
There is a very narrow exception to the requirement of expert
testimony "where the matter is so simple or the lack of skill or
care so obvious as to be within the range of experience and
comprehension of even non-professional persons." *Id.* (quoting
*Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997)).  The
instant case is not the type of case that is so simple or the lack
of  care so obvious as to fall within the narrow exception to the
requirement of expert testimony.  Accordingly, the plaintiff
needed to file a certificate of merit attesting that an
appropriate licensed professional has supplied a written statement
that there exists a reasonable probability that the care provided
by defendant Beaven fell outside acceptable professional standards
and that such conduct was a cause in bringing about the
plaintiff's harm.

3.  Given that we will recommend that the negligence claims
against defendant Beaven be dismissed based on the plaintiff's
failure to file a proper certificate of merit, we need not address
defendant Beaven's arguments that the negligence claim be
dismissed for failure to state a claim upon which relief can be
granted or that, if the court dismisses the plaintiff's federal
claims against him, it should decline to exercise supplemental
jurisdiction over the state law medical malpractice claims against
(continued...)

16

B. 42 U.S.C. § 1983 Eighth Amendment Claims.


Defendant Beaven contends that the plaintiff's Eighth Amendment claims against him should be dismissed because the plaintiff failed to exhaust administrative remedies.


42 U.S.C. § 1997e(a), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.


Pursuant to § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S.

---

3. (...continued)
him.

516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). As an affirmative defense, the failure to exhaust available administrative remedies must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

The plaintiff alleges in the complaint that he exhausted administrative remedies. *See Doc. 1* at 1. Defendant Beaven, on the other hand, contends that the plaintiff has in fact not done so because the plaintiff failed to timely file the grievance that he filed. Defendant Beaven relies on documents outside of the pleadings to support that assertion. However, as set forth above, we can not consider those documents without converting the motion to dismiss into a motion for summary judgment which we will not do in the instant case. Accordingly, we will not

18

recommend that the plaintiff's Eighth Amendment claims against defendant Beaven be dismissed based on a failure to exhaust administrative remedies.

Defendant Beaven contends that the complaint fails to state an Eighth Amendment claim against him upon which relief can be granted.

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In order for the plaintiff to state a viable Eighth Amendment medical care claim he must allege that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).

Deliberate indifference is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994).  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d

318, 330 (3d Cir. 2009).  To act with deliberate indifference,
the prison official must have known of the substantial risk of
serious harm and must have disregarded that risk by failing to
take reasonable measures to abate it. *Farmer, supra,* 511 U.S. at
837.  "[T]he official must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference." *Id.*  Deliberate
indifference may be found in a variety of circumstances including
where a prison official knows of a prisoner's need for medical
treatment but intentionally refuses to provide it, delays
necessary medical treatment based on a non-medical reason, denies
prescribed or recommended treatment or persists in a particular
course of treatment "'in the face of resultant pain and risk of
permanent injury.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.
1999)(quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir.
1990)).

          "It is well-settled that claims of negligence or medical
malpractice, without some more culpable state of mind, do not
constitute 'deliberate indifference.'" *Id.*  "Medical malpractice
does not become a constitutional violation merely because the

victim is a prisoner." *Estelle, supra,* 429 U.S. at 106. "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates. Courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa. 1996)(quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . . Nor does mere disagreement as to the proper medical

21

treatment support a claim of an eighth amendment violation.");
*White*, *supra,* 897 F.2d at 110 (mere disagreement over proper
treatment does not state a claim upon which relief can be
granted).

The plaintiff has alleged facts from which it can
reasonably be inferred that he had a serious medical need.
However, we agree with defendant Beaven that the plaintiff has
not alleged facts from which it can reasonably be inferred that
defendant Beaven was deliberately indifferent to the plaintiff's
serious medical needs.

The plaintiff alleges that he asked defendant Beaven why
he was not given a walking boot, that defendant Beaven said that
there had been a mix up and that a boot was ordered but that it
was not until six days later that a staff member came to the ward
and asked the plaintiff's shoe size so that the boot could be
ordered.  The plaintiff does not allege facts from which it can
reasonably be inferred that defendant Beaven knew of the delay in
ordering the boot or that he was aware that a delay in ordering
the boot would cause a substantial risk of serious harm to the

plaintiff.  Accordingly, the complaint fails to state an Eighth

Amendment claim upon which relief can be granted against

defendant Beaven based on the delay in providing the boot.


The plaintiff alleges that defendant Beaven discharged

him from the infirmary and sent him back to the population after

he had only one month and six days of healing, that he still had

an open wound when he was discharged, that defendant Beaven told

him that he would be called back to the infirmary every other day

to have the dressings on his wound changed but that he was not

called back to have his dressings changed and that after seven

days he developed an infection.  Generally, a doctor's decision

about when to discharge a patient and about the frequency of

dressing changes are matters within the doctor's professional

judgment.  The plaintiff does not allege facts from which it can

reasonably be inferred that defendant Beaven knew that

discharging the plaintiff from the infirmary when he did would

cause a substantial risk of serious harm to the plaintiff, that

he knew that the plaintiff's dressings had in fact not been

changed every other day as he had asserted that they would be or

that the failure to change the dressings every other day would

cause a substantial risk of serious harm to the plaintiff. Accordingly, the complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Beaven based on his discharging of the plaintiff from the infirmary and the frequency of bandage changes.

The plaintiff alleges that defendant Beaven denied his request for a wheelchair. He alleges that sometime subsequent to defendant Beaven's denial of a wheelchair other another doctor and nurse gave him a wheelchair. He also alleges that he had previously been given a handheld walker.[4] The plaintiff, however, does not allege facts from which it can reasonably be inferred that defendant Beaven knew that not providing a wheelchair would cause a substantial risk of serious harm to the plaintiff. Accordingly, the complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Beaven based on his refusal to provide a wheelchair.

---

[4]. As set forth above, the plaintiff complains about the delay in receiving a walking boot. It is not clear from the allegations of the complaint whether at the time the plaintiff requested a wheelchair from defendant Beaven he had been given a walking boot.

Because the complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Beaven, it will be recommended that the plaintiff's 42 U.S.C. § 1983 Eight Amendment claims against defendant Beaven be dismissed.

C. Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

We can not say as a matter of law that amendment would be inequitable or futile in this case. Thus, we will recommend that the plaintiff be granted leave to file an amended complaint. Any amended complaint shall be titled as an amended complaint and shall contain the docket number of this case. Any amended complaint must be complete in all respects and must contain all

of the plaintiff's claims.  Any amended complaint must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed.  Any amended complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure.

IV.  Recommendations.

        Based on the foregoing, it is recommended that defendant Beaven's motion (doc. 18) to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) be granted.  It is further recommended that the plaintiff be granted leave to file an amended complaint. Finally, it is recommended that the case be remanded to the undersigned for further proceedings.

                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  December 10, 2010.