UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH B. SCALES,          :    **CIVIL NO. 3:10-CV-00333**
                               :
          Plaintiff      :    (Chief Judge Kane)
                               :
        v.              :    (Magistrate Judge Smyser)
                               :
JEFF WITHERITE, et al.,     :
                               :
          Defendants     :

## REPORT AND RECOMMENDATION

The prisoner plaintiff in this case tore his Achilles Tendon playing basketball.  He had surgery to repair the tendon, but he later retore the tendon and needed a second surgery.  The claims in this case concern among other things the medical care that the plaintiff received after his surgeries.  Two of the defendants - a doctor and a physician's assistant - have moved to dismiss the amended complaint.  Because the plaintiff has not filed a proper certificate of merit as required by Pa.R.Civ.P. 1042.3(a), we recommend that the plaintiff's malpractice claims against the doctor and physician's assistant be dismissed. Because the amended complaint fails to state an Eighth Amendment claim against the doctor and physician's assistant upon which can

be granted, we recommend that the 42 U.S.C. § 1983 claims against the doctor and physician's assistant be dismissed.

I. Background and Procedural History.

The plaintiff, a state prisoner proceeding *pro se*, commenced this action by filing a complaint.  One of the defendants - defendant Beaven - filed a motion to dismiss the complaint.  The court granted that motion but granted the plaintiff leave to file an amended complaint.  On March 28, 2011, the plaintiff filed an amended complaint.

The plaintiff names the following individuals as defendants in the amended complaint: 1) Jeff Witherite, a unit manager at the State Correctional Institution at Camp Hill (SCI-Camp Hill); 2) Philip Richardson, a physician's assistant at SCI-Camp Hill; 3) Teresa Law, the Healthcare Administrator at SCI-Camp Hill; 4) C.O. Oister, a corrections officer at SCI-Camp Hill; and 5) Barry Beaven, a doctor at SCI-Camp Hill.

The plaintiff alleges the following facts in his amended complaint.

The plaintiff ruptured his Achilles Tendon playing basketball at SCI-Camp Hill.  Defendant Witherite forced him to walk over a quarter of a mile to the dispensary.  Defendant Witherite intentionally delayed his access to treatment and caused him pain and suffering.

At the dispensary, defendants Richardson and Beaven confirmed that the plaintiff had ruptured his tendon.  Defendant Beaven stated that an amputation would solve the problem.

On October 9, 2008, the plaintiff had surgery at the York Memorial Hospital.  The surgeon, Dr. Sullivan, told the plaintiff that he had a complete rupture of his tendon but that the surgery had gone well.  Dr. Sullivan instructed the plaintiff to keep his leg elevated and to return in seven to fourteen days to have the cast removed, to have the sutures taken out, and to be fitted for a camwalker walking boot.

At the hospital, while the plaintiff was unconscious and while an officer was present, a cast was applied.  Two officers stood guard during the plaintiff's entire hospital stay, and the plaintiff was shackled to the bed during his hospital stay.  The plaintiff was strip searched prior to his return to SCI-Camp Hill.  Even so, when the plaintiff returned to SCI-Camp Hill after the surgery, a corrections officer had concerns that the plaintiff had something concealed in his cast.  Defendant Richardson removed the cast.  Nothing was found.  Defendant Richardson then applied gauze over the tape that Dr. Sullivan had applied over the sutures.  Defendant Richardson caused the plaintiff unbearable pain and caused his ankle to swell by taking his foot out of the fixed position in which it had been placed.

The plaintiff subsequently informed defendant Beaven about the removal of his cast.  Defendant Beaven stated that he had no control over security.

On October 27, 2008, the plaintiff was taken to Dr. Sullivan's office to have the cast removed, to have the sutures taken out, and to be fitted for the walking boot.  The nurse

4

asked the plaintiff what had happened to his cast, and the
plaintiff told her.  The nurse then unwrapped the plaintiff's
ankle and took out the sutures.  Dr. Sullivan then examined the
incision, checked the plaintiff's range of motion, and told him
that the nurse would be back to fit him for a walking boot.  But
when the nurse returned she said that she had been instructed not
to give the plaintiff the boot because it was an unauthorized
item in prison.  Corrections Officers Washington and Reed said
that they had escorted prisoners back to the prison with such
boots before and that they would get the matter straightened out
with defendant Law.  Defendant Law was made aware that Dr.
Sullivan did not supply the boot because he was instructed not to
by her department.  Defendant Law did not give him the boot
prescribed by Dr. Sullivan.

The plaintiff was taken back to the infirmary at SCI-Camp
Hill where a nurse gave him a handheld walker.  He tried to no
avail to explain to the nurse the difference between a walker and
a walking boot.  The next morning, the plaintiff informed
defendant Beaven of what had happened and asked why he wasn't
allowed to have the walking boot.  Defendant Beaven stated that

there had been a mix up, that a boot was ordered for him, and
that in the meantime there was a used boot in the dispensary that
he thought could be used.  As it turned out, the used boot did
not fit the plaintiff.  Yet the plaintiff was not taken back to
Dr. Sullivan's office to get the boot that had been prescribed
for him.  Instead, approximately six days later, a staff member
came to the ward and asked the plaintiff his shoe size so that a
walking boot could be ordered for him.

On October 14, 2008, defendant Oister moved the plaintiff
to D Ward and placed him in a bed that was situated in the corner
of the ward.  It was difficult for the plaintiff to squeeze
through the eleven-inch gap between the foot of another bed and
the duct work on the wall.  The next morning, the plaintiff
explained this to defendant Oister and asked if he could move to
one of three open beds.  Defendant Oister told him "no."  Other
staff members saw that the plaintiff was having a difficult time
negotiating the gap, and they asked why he had been placed in
that bed.  On November 6, 2008, defendant Oister ordered the
plaintiff to get up and pack his property because he was being
discharged back to the block.  In the process of doing so, the

6

plaintiff slipped and fell going through the gap.  He caught his ankle on the corner of the duct work.  This caused a deep gash from the inside of the plaintiff's ankle to the opposite side of his heel.  He retore his Achilles Tendon causing him to need a second surgery.  The plaintiff claims that defendant Oister violated the Eighth Amendment by placing him in that particular bed and refusing to move him when it was obvious that it was difficult for him to negotiate the eleven-inch gap on crutches.

Because the plaintiff's bed in the infirmary was needed, on December 15, 2008, defendant Beaven discharged the plaintiff from the infirmary and sent him back to population.  The plaintiff had only had a month and six days of healing and he still had an open wound.  Defendant Beaven told him that he would be scheduled to have his wound cleaned and checked and his dressings changed every other day.

To get to the infirmary from his block, the plaintiff had to travel through snow and ice.  He was concerned that if he slipped he could injure his tendon again.  So, at the recommendation of two nurses, the plaintiff requested a

7

wheelchair from defendant Beaven.  But defendant Beaven denied
that request.

    After seven days back on the block during which time his
wound had not been checked or cleaned, the plaintiff's leg felt
hot and was painful.  The plaintiff took the window off the cast
and observed pus oozing from the wound.  He informed the
corrections officers on duty who called the dispensary.  He was
sent to the dispensary where he saw a doctor and a nurse, who
checked and cleaned his wound, applied fresh dressings,
prescribed two types of antibiotics, and scheduled him for daily
dressing changes.  He asked the doctor and nurse if he could use
a wheelchair because of the distance that he had to traverse on
crutches on a daily basis.  They agreed that the request was
reasonable and they gave him a wheelchair.

    Defendant Beaven asked the plaintiff several times if he
was ready for an amputation.  There was a known case of MRSA on
the plaintiff's block, and the plaintiff was in a cell close to
the infected inmate.  The plaintiff questions whether an
amputation was defendant Beaven's plan for him.  He contends that

he could have died or needed an amputation as a result of the infection.  The plaintiff claims that defendant Beaven violated the Eighth Amendment by disregarding an excessive risk of harm by discharging him back to the population.

On January 13, 2009, the plaintiff was taken to see Dr. Nachtigall, the surgeon who had performed the second surgery. Dr. Nachtigall applied a new cast.

The plaintiff filed an informal complaint with Superintendent Polakovich informing him of all that he had to endure since he had been injured.  Superintendent Polakovich replied that he had received the complaint and that Major Horner would be contacting the plaintiff shortly.  Major Horner later interviewed the plaintiff and told him that he would conduct an investigation.  On February 18, 2009, the plaintiff was transferred to the State Correctional Institution at Graterford. He waited for Major Horner's report, but he did not receive it. He filed a grievance which was rejected as untimely.  After being transferred again, the plaintiff exhausted the grievance process.

The plaintiff is seeking declaratory relief as well as compensatory and punitive damages.

Defendants Beaven and Richardson filed a motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6).

II.  Motion to Dismiss Standard.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v.*

*Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But more is required than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Id.*  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at 570).  "A

11

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* But "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011). Rule 8(a)(2) "requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.* The factual detail necessary to satisfy the standard will vary depending on the case. *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 320 n.18 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

III.  Discussion.

    The amended complaint is construed as containing both state law medical malpractice claims and 42 U.S.C. § 1983 Eighth Amendment claims against defendants Beaven and Richardson. Defendants Beaven and Richardson seek dismissal of both categories of claims.

    A.  Medical Malpractice Claims.

    Defendants Beaven and Richardson contend that the plaintiff's medical malpractice claims against them should be dismissed because the plaintiff did not file a proper certificate of merit.

    Pennsylvania Rule of Civil Procedure 1042.3(a) provides:

    (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

13

> (1) an appropriate licensed professional has
> supplied a written statement that there exists a
> reasonable probability that the care, skill or
> knowledge exercised or exhibited in the
> treatment, practice or work that is the subject
> of the complaint, fell outside acceptable
> professional standards and that such conduct was
> a cause in bringing about the harm, or
> (2) the claim that the defendant deviated from an
> acceptable professional standard is based solely
> on allegations that other licensed professionals
> for whom this defendant is responsible deviated
> from an acceptable professional standard, or
> (3) expert testimony of an appropriate licensed
> professional is unnecessary for prosecution of
> the claim.

Rule 1042.3 applies to civil actions in which a professional

liability claim is asserted against a licensed professional.

Pa.R.Civ.P. 1042.1(a).  Pursuant to Pa.R.Civ.P. 1042.7, if a

certificate of merit is not filed as required by Pa.R.Civ.P.

1042.3, the prothonotary, on praecipe of the defendant, shall

enter a judgment of *non pros* against the plaintiff.  The

certificate of merit requirement of Pa.R.Civ.P. 1042.3 applies in

a case pleading a claim for medical malpractice, whether the case

is filed in state or federal court. *See generally Chamberlain v.

Giampapa*, 210 F.3d 154, 161 (3d Cir. 2000)(holding that New

Jersey's affidavit of merit statute [which is similar to

14

Pennsylvania's Rule 1042.3] is a substantive state law that must be applied by federal courts sitting in diversity).

The plaintiff attached to his amended complaint documents titled as certificates of merit.  He asserts in those documents that expert testimony is unnecessary in this case.

Expert testimony is necessary to support the plaintiff's malpractice claims against defendants Beaven and Richardson. Because the negligence of a medical provider "encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003).  There is a very narrow exception to the requirement of expert testimony "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons." *Id.* (quoting *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997)).  This case is not the type of case that is so simple or the lack of care so obvious as to fall

15

within the narrow exception to the requirement of expert testimony.

The plaintiff needed to file certificates of merit attesting that an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care provided by defendants Beaven and Richardson fell outside acceptable professional standards and that such conduct was a cause in bringing about the plaintiff's harm.  He has not done so.  Because the plaintiff has not filed proper certificates of merit, we recommend that the malpractice claims against defendants Beaven and Richardson be dismissed.

B. 42 U.S.C. § 1983 Eighth Amendment Claims.

Defendants Beaven and Richardson contend that the amended complaint fails to state Eighth Amendment claims against them upon which relief can be granted.

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic

16

medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In order for the plaintiff to state a viable Eighth Amendment medical care claim he must allege that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).

Deliberate indifference is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994).  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009).  To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer, supra,* 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*  Deliberate indifference may be found in a variety of circumstances including where a prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays

necessary medical treatment based on a non-medical reason, denies prescribed or recommended treatment or persists in a particular course of treatment "'in the face of resultant pain and risk of permanent injury.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)(quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)).

"It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Id.* "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle, supra,* 429 U.S. at 106. "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates. Courts will "disavow any attempt to second guess the

propriety or adequacy of a particular course of treatment . . .
which remains a question of sound professional judgment." *Little
v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa. 1996)(quoting
*Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d
Cir. 1979)).  Mere disagreement as to the proper medical
treatment does not support an Eighth Amendment claim. *Monmouth
County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d
326, 346 (3d Cir. 1987).

The plaintiff has alleged facts from which it can
reasonably be inferred that he had a serious medical need.  But
we conclude that the plaintiff has not alleged facts from which
it can reasonably be inferred that either defendant Beaven or
defendant Richardson was deliberately indifferent to the
plaintiff's serious medical needs.[1]

---

1. At one point in his brief, defendant Beaven asserts that the
plaintiff must establish that he knowingly injured him.  That is
not the Eighth Amendment standard applicable to medical claims. We
analyze the claims under the deliberate indifferent standard set
forth above.  We note that defendant Richardson also argues for a
standard other than deliberate indifference.  We address that
argument in more detail in the discussion of the claim against
defendant Richardson.

1.  Defendant Beaven.

The plaintiff claims that defendant Beaven violated the Eighth Amendment by failing to provide a walking boot, by discharging him prematurely from the infirmary, by failing to ensure that his wound was cleaned and checked and the dressings changed every other day, and by failing to provide him with a wheelchair.

a. The Walking Boot.

The plaintiff alleges that he asked defendant Beaven why he was not given a walking boot.  He alleges that defendant Beaven responded that there had been a mix up, that a boot was ordered, and that there was a used boot in the infirmary which he thought could be used.  But, the plaintiff alleges, the used boot did not fit him and it was not until six days later that a staff member came to the ward and asked the plaintiff's shoe size so that a new boot could be ordered.  The plaintiff does not allege facts from which it can reasonably be inferred that defendant Beaven knew that the used boot did not fit the plaintiff.  He

also does not allege facts from which it can reasonably be inferred that defendant Beaven knew of the delay in ordering the new boot or that he was aware that a delay in ordering the new boot would cause a substantial risk of serious harm to the plaintiff.  Accordingly, the amended complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Beaven based on the delay in providing the boot.

b. Discharge from the Infirmary and Wound Care.

The plaintiff alleges that defendant Beaven discharged him from the infirmary and sent him back to the population after he had only one month and six days of healing and that he still had an open wound when he was discharged.  He alleges that defendant Beaven told him that he would be scheduled to have his wound cleaned and checked and to have the dressings on his wound changed every other day.  He alleges that in fact his wound was not cleaned or checked and that after seven days he developed an infection.  He also alleges that defendant Beaven asked him several times if he was ready for an amputation.

21

Generally, a doctor's decision about when to discharge a patient and about the frequency of wound care and dressing changes are matters within the doctor's professional judgment. The plaintiff does not allege that defendant Beaven knew that the plaintiff's wound had not been checked or that the dressings had not been changed as defendant Beaven had said that they would be. Thus, the plaintiff does not allege facts from which it can reasonably be inferred that defendant Beaven knew that discharging the plaintiff from the infirmary when he did would cause a substantial risk of serious harm to the plaintiff.  This is so despite defendant Beaven's comments regarding an amputation.  Further, as Chief Judge Kane noted in connection with the original complaint, there are no allegations to support an inference that defendant Beaven's discharge of the plaintiff from the infirmary, assuming it was premature, was anything more than negligence.  Accordingly, the amended complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Beaven based on his discharging of the plaintiff from the infirmary and the frequency of wound care and bandage changes.

c.  The Wheelchair.

The plaintiff alleges that to get to the infirmary from his block he had to travel through snow and ice.  He was concerned that if he slipped he could injure his tendon again. So, at the recommendation of two nurses, the plaintiff requested a wheelchair from defendant Beaven.  But defendant Beaven denied that request.  Seven days later, another doctor and nurse gave the plaintiff a wheelchair.

The plaintiff was without the wheelchair for seven days. He does not allege that he had any problems during that time because he did not have a wheelchair.  Whether a wheelchair, rather than crutches, is appropriate is a medical judgment.  The plaintiff does not allege facts from which it can reasonably be inferred that defendant Beaven knew that not providing a wheelchair would cause a substantial risk of serious harm to the plaintiff.  Thus, the amended complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Beaven based on his refusal to provide a wheelchair.

Because the amended complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Beaven, it will be recommended that the plaintiff's 42 U.S.C. § 1983 Eight Amendment claims against defendant Beaven be dismissed.

2. Defendant Richardson.

The plaintiff alleges that defendant Richardson caused him unbearable pain and caused his ankle to swell by removing his cast and taking his foot out of the fixed position in which it had been placed.  He claims that defendant Richardson violated the Eighth Amendment.

Defendant Richardson contends that because he removed the plaintiff's cast because of security concerns the applicable Eighth Amendment standard is whether he removed the cast maliciously and sadistically for the very purpose of causing harm.  We disagree.

24

The Eighth Amendment bans only cruel and unusual punishment. *Wilson v. Seiter,* 501 U.S. 294, 300 (1991). "If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." *Id.* (italics in original). That mental element is wantonness. *Id.* at 302 ("[O]ur cases say that the offending conduct must be *wanton.*"); *Whitley v. Albers,* 475 U.S. 312, 319 (1986)("It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). But wantonness does not have a fixed meaning. *Wilson, supra,* 501 U.S. at 302. Rather, it must be determined "with due regard for the differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Whitley, supra,* 475 U.S. at 320.

In Eighth Amendment cases challenging medical care, wantonness is defined as deliberate indifference. *See Estelle,*

*supra,* 429 U.S. at 104; *Farmer, supra,* 511 U.S. at 834.   "This is
true whether the indifference is manifested by prison doctors in
response to the prisoner's needs or by prison guards in
intentionally denying or delaying access to medical care or
intentionally interfering with the treatment once prescribed."
*Estelle, supra,* 429 U.S. at 104-105 (footnotes omitted).   The
deliberate indifference standard is appropriate in the medical
context because "the State's responsibility to attend to the
medical needs of prisoners does not ordinarily clash with other
equally important governmental responsibilities." *Whitley, supra,*
475 U.S. at 320.   Deliberate indifference in the medical context
"can typically be established or disproved without the necessity
of balancing competing institutional concerns for the safety of
prison staff or other inmates." *Id.*

       The wantonness of conduct does not depend upon its effect
on the prisoner. *Wilson, supra,* 501 U.S. at 303.   Instead,
whether conduct "can be characterized as "wanton" depends upon
the constraints facing the *official*." *Id.* (italics in original).
"From that standpoint," there is "no significant distinction
between claims alleging inadequate medical care and those

alleging inadequate 'conditions of confinement.'" *Id.* "There is

no indication that, as a general matter, the actions of prison

officials with respect to these nonmedical conditions are taken

under materially different constraints than their actions with

respect to medical conditions." *Id.* Thus, the deliberate

indifference standard also applies in conditions of confinement

cases. *Id.*

But the deliberate indifference standard is not

applicable in Eighth Amendment cases involving the alleged use of

excessive force. Instead, when prison officials are accused of

using excessive force in violation of the Eighth Amendment the

inquiry "is whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically

to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In

the use of force context, prison officials must balance the need

to maintain or restore discipline against the risk of injury to

prisoners. *Id.* at 6. "In this setting, a deliberate indifference

standard does not adequately capture the importance of such

competing obligations, or convey the appropriate hesitancy to

critique in hindsight decisions necessarily made in haste, under

pressure, and frequently without the luxury of a second chance."
*Whitley, supra,* 475 U.S. at 320.

The removal of a prisoner's cast by a physician's
assistant because of security concerns on the part of a
corrections officer does not neatly fit into either the use of
force context or the medical care/conditions of confinement
context.  There is no reasonable basis to conclude that defendant
Richardson needed to act in haste or under pressure in removing
the cast.  The constraints facing defendant Richardson are more
like the constraints facing a medical provider in providing
medical care or a corrections official in dealing with conditions
of confinement than they are like in the use of force setting.
So, we conclude that the deliberate indifference standard, rather
than the higher "maliciously and sadistically to cause harm"
standard, is the applicable standard.

The question then is whether the plaintiff's allegations
lead to a reasonable inference that defendant Richardson
recklessly disregarded a substantial risk of serious harm to the
plaintiff by removing the cast.  The plaintiff would need to

28

prove that defendant Richardson knew of a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer, supra,* 511 U.S. at 837. The plaintiff would need to prove that he was aware of facts that would have caused him to know that removing the cast created a substantial risk of serious harm to the plaintiff. *Id.*

The plaintiff alleges that defendant Richardson caused him unbearable pain and caused his ankle to swell by removing his cast and taking his foot out of the fixed position in which it had been placed.  Those allegations concern what resulted from defendant Richardson's actions.  There are no allegations in the amended complaint that specifically involve defendant Richardson's state of mind in removing the cast.  But it is alleged that he removed the cast because a corrections officer expressed a concern that the plaintiff may have something hidden in it.  We have no basis apart from ordinary experience and a general knowledge of the medical arts to infer that the removal and replacement of a cast would pose a risk of harm to the patient.  Defendant Richardson is a medical professional and he

replaced the cast.[2]  The plaintiff has not alleged facts from
which it can reasonably be inferred that defendant Richardson
knew that removing the cast created a substantial risk of serious
harm to the plaintiff or that he disregarded that risk by failing
to take reasonable measures known to him as a medical
professional to abate it.  Accordingly, the amended complaint
fails to state an Eighth Amendment claim against defendant
Richardson upon which relief can be granted.

    C. Leave to Amend.

    "[I]f a complaint is subject to a Rule 12(b)(6)
dismissal, a district court must permit a curative amendment
unless such an amendment would be inequitable or futile."
*Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir.
2008).  The court "must provide the plaintiff with this

---

2. The plaintiff alleges that defendant Richardson applied gauze
over the tape that Dr. Sullivan had applied over the sutures.  He
does not specifically allege that defendant Richardson reapplied
the cast or wrapped his ankle.  But it can be inferred that
defendant Richardson either reapplied the cast or at least wrapped
the plaintiff's ankle because the plaintiff alleges that he was
later taken to the doctor's office to among other things have the
cast removed and that at the doctor's office the nurse unwrapped
his ankle.

opportunity even if the plaintiff does not seek leave to amend."

*Id.* After reviewing the original complaint, the court granted the plaintiff leave to file an amended complaint. He filed an amended complaint. But the amended complaint still fails to state a claim upon which relief can be granted against defendants Beaven and Richardson. Further leave to amend would be futile.

IV. Recommendations.

Based on the foregoing, it is recommended that defendants Beaven and Richardson's motion (doc. 69) to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) be granted. It is also recommended that the case be remanded to the undersigned for further proceedings.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: July 12, 2011.